■ In the Matter of DUNRITE PAINTING Co., INC., et al., Respondents, v IRWIN FRUCHTMAN, as Commissioner of the Department of Buildings of the City of New York, et al., Appellants. — Judgment, Supreme Court, New York County, entered May 23, 1980, granting an article 78 petition for an order restraining the department of buildings from revoking his special rigger license without first affording him a hearing as required by section B26-1.8 of the New York City Administrative Code unanimously reversed, on the law, without costs or disbursements, and the petition dismissed. Petitioner has been licensed as a special rigger by the department of buildings for many years. One of his employees fell from a scaffold and suffered fatal injuries. An inspection showed violations. Petitioner's license was revoked. This court granted his petition and reinstated his license without prejudice to respondent's right to schedule a new hearing for revocation or suspension on proper notice. *(Silverstein v Minkin,* 67 AD2d 644.) In the interim, however, petitioner had filed a new application form, and subsequent to our decision, he was issued a new license. Thereafter, the Court of Appeals found that proper notice had been given, and sustained the revocation. The department of buildings thereupon notified petitioner that the prior permanent revocation was being continued. In opposing the petition the city contends that the new license was merely a reissue of the old license and was based on this court's determination, which determination was reversed, and therefore it could revoke the new license without a hearing. Finding that the new license was based on a separate application and that it was issued under a new number, Special Term held that the two licenses must be considered separate and distinct and that a hearing is required to revoke the new license. We disagree. Treating as two wholly different licenses, as did Special Term, the license revoked on July 21, 1978 after the accident and the license issued after this court's decision on January 18, 1979 is, in our view, a distortion of the facts, and allows petitioner, as undeserving as he is of a license, more time to exploit the judicial system for his own gain. While its appeal to the Court of Appeals was pending, the department of buildings, in obvious response to our order, relicensed petitioner. The argument that the license was issued solely as a result of the new application ignores the consideration that no purpose would have been served in pursuing an appeal to revoke the original license if a new license were issued. Petitioner's license was revoked because of the discovery of nine safety violations at the work site after one of his employees was fatally injured in a fall from a scaffold erected by petitioner under his special rigger's license. To believe that the city would issue a new license on its own, while pursuing its judicial remedies to disenfranchise petitioner, renders its appeal from this court's order a mere exercise of magisterial prerogative. That the city did not avail itself of the automatic stay provisions of

CPLR 5519 (subd [a]) and instead restored petitioner's license after he had been successful in this court does not detract from the legitimacy of its position that the permit issued in April of 1979 was a relicense in compliance with this court's mandate. That it bore a new number is of no legal significance. Prior to the original revocation of his license petitioner had an opportunity for a hearing, which he forfeited. As matters turned out he was never entitled to a reissuance of his license. He should not be permitted to retain a license to which he is not entitled, particularly when the consequences could be a repetition of the type of accident which caused his license to be revoked in the first place. Concur — Murphy, P.J., Kupferman, Sullivan, Markewich and Lynch, JJ.